UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANN VIRGINIA ARZU,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>NANCY A. BERRYHILL, Deputy Commissioner for Operations of Social Security Administration,<br><br>　　　　Defendant. | Case No. CV 16-4665-SP<br><br>MEMORANDUM OPINION AND ORDER |

**I.**

**<u>INTRODUCTION</u>**

On June 27, 2016, plaintiff Ann Virginia Arzu filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of supplemental security income. The parties have fully briefed the matters in dispute, and the court deems the matter suitable for adjudication without oral argument.

Plaintiff effectively presents three disputed issues for decision: (1) whether the Administrative Law Judge ("ALJ") adequately considered plaintiff's mental

1

health symptoms and limitations as evidenced in treating records; (2) whether the ALJ properly rejected plaintiff's subjective complaints presented in her testimony; and (3) whether the ALJ properly determined at step five that plaintiff could perform a significant number of jobs. Memorandum in Support of Complaint ("P. Mem.") at 2-9; *see* Memorandum in Support of Defendant's Answer ("D. Mem.") at 3-13.

Having carefully studied the parties' memoranda on the issues in dispute, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ properly considered the plaintiff's mental health symptoms, properly rejected plaintiff's subjective complaints, and properly determined plaintiff could perform a significant number of jobs. Consequently, the court affirms the decision of the Commissioner denying benefits.

## II.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, who was forty years old on the alleged disability onset date, completed two years of college. AR at 71, 293. Plaintiff last worked in 2004 as a custodian. *Id.* at 79. Plaintiff's date last insured was December 31, 1998. *Id.* at 166.

On November 7, 2012, plaintiff filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). AR at 166; *see id.* at 139, 145. Plaintiff alleged a disability onset date of July 17, 2004 due to knee injury, diabetes, high blood pressure, depression, cholesterol, and vision problem. *Id.* at 71, 165. The Commissioner denied plaintiff's applications on June 7, 2013. *Id.* at 82-86.

Plaintiff filed a written request for hearing on July 22, 2013. *Id.* at 89. On August 25, 2014, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ. *Id.* at 37-60. The ALJ also heard testimony from Ronald

Hatakeyama, a vocational expert ("VE"). *Id*. at 54-60. On October 24, 2014, the ALJ denied plaintiff's claim for benefits. *Id*. at 19-30.

The ALJ found plaintiff meets the insured status requirements of the Social Security Act through December 31, 1998. *Id.* at 21. The ALJ then employed the well-known five-step sequential evaluation process. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since July 17, 2004, the alleged onset date. *Id.*

At step two, the ALJ found plaintiff suffered from the following severe impairments: hypertension, diabetes mellitus, lumbar strain, affective disorder, and alcohol abuse. *Id.* at 21. The ALJ noted that plaintiff's knee and vision problems are non-severe impairments. *Id.* at 22. Further, the ALJ noted that plaintiff's schizophrenia with paranoia is not a medically determinable impairment, finding "it is not supported by the medical evidence record" and "[t]here is no work up for it, only an unsupported diagnosis." *Id.*

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). *Id.*

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and determined she had the RFC to perform light work, and had the limitations that she could: occasionally lift and carry 20 pounds and frequently lift and carry up to 10 pounds; stand and walk six hours in an eight-hour workday; sit six hours in an eight-hour workday; and frequently kneel, crouch, stoop, and crawl. *Id.* at 24. The

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

ALJ also limited plaintiff to jobs that would require no more than occasional contact with the general public, co-workers, or supervisors. *Id.*

The ALJ found, at step four, that plaintiff could not perform her past relevant work as an industrial cleaner. *Id.* at 28.

At step five, considering plaintiff's age, education, work experience, and RFC, the ALJ found there were jobs that existed in significant numbers in the national economy that plaintiff could perform, including housekeeping cleaner, assembler of small products I, and office helper. *Id*. at 29-30. Consequently, the ALJ concluded plaintiff did not suffer from a disability as defined by the Social Security Act ("Act" or "SSA") from July 17, 2004 through the date of the decision. *Id.* at 30.

Plaintiff timely filed a request for review of the ALJ's unfavorable decision, which the Appeals Council denied on May 6, 2016. *Id*. at 1-3, 7. The ALJ's decision stands as the final decision of the Commissioner.

### III.

### **STANDARD OF REVIEW**

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such

"relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## **DISCUSSION**

With regard to the DIB application, plaintiff concedes she has not established eligibility before the DLI. P. Mem. at 2. But plaintiff alleges she is eligible for SSI benefits. *Id.* Plaintiff argues that in denying her SSI application, the ALJ failed to adequately consider plaintiff's mental health symptoms and limitations as submitted in treating records and that the ALJ improperly rejected plaintiff's testimony. P. Mem. at 2-7. Specifically, plaintiff contends "the ALJ failed to provide evaluation and discussion of the records from St. Johns and Kedren Mental Health," which support that plaintiff suffers from "Major Depressive Disorder, Psychosis, as well as Schizophrenia and Bi-Polar Disorder." *Id.* at 3. Plaintiff further argues that as a result, based on his RFC determination, the ALJ posed an improper hypothetical to the VE and improperly determined plaintiff could perform a significant number of jobs. *Id.* at 7-9.

This court disagrees with plaintiff's contentions. Review of the record

5

indicates that there is substantial evidence to support the ALJ's consideration of plaintiff's mental impairments and limitations. Further, the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting plaintiff's testimony. Consequently, the hypothetical the ALJ presented to the VE was proper.

**A.** **The ALJ Did Not Err in Considering Plaintiff's Mental Impairments and Limitations**

Plaintiff first argues that the ALJ did not adequately consider plaintiff's mental impairments and limitations as presented by plaintiff's treating physicians when assessing her RFC. P. Mem. at 2.

RFC is what one can "still do despite [his or her] limitations." 20 C.F.R. § 416.945(a)(1)-(2).[2] The ALJ reaches an RFC determination by reviewing and considering all of the relevant evidence, including non-severe impairments. *Id.*

In determining whether a claimant has a medically determinable impairment and his or her RFC, among the evidence the ALJ considers is medical evidence. 20 C.F.R. § 416.927(b). In evaluating medical opinions, the regulations distinguish among three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. 20 C.F.R. § 416.927(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 416.927(c)(1)-(2). The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to understand and observe a claimant. *Smolen v. Chater*, 80 F.3d

---

[2] All citations to the Code of Federal Regulations refer to regulations applicable to claims filed before March 27, 2017.

6

1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Nevertheless, the ALJ is not bound by the opinion of the treating physician. *Smolen*, 80 F.3d at 1285. If a treating physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for giving it less weight. *Lester*, 81 F.3d at 830. If the treating physician's opinion is contradicted by other opinions, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it. *Id.* at 830. Likewise, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting the contradicted opinions of examining physicians. *Id.* at 830-31. The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1066 n.2 (9th Cir. 2006); *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d 813, 818 n.7 (9th Cir. 1993).

Here, plaintiff alleges that she suffers from major depressive disorder, psychosis, schizophrenia and bi-polar disorder. P. Mem. at 3. But plaintiff's allegation that she suffers from psychosis and bi-polar disease is new. It appears her sole argument to support these claimed conditions is that she was prescribed with medication that treats them. *See id.* at 3-4. Plaintiff does not cite to the record to support her claim the medication was prescribed to treat those conditions. In fact, review of the record reflects that plaintiff was not diagnosed with psychosis or bi-polar disease at any point.

With regard to schizophrenia, the ALJ found her condition is not a medically determinable impairment because it is not supported by the medical evidence as a whole. AR at 22. Specifically, the ALJ noted "[t]here is no work up for it, only an unsupported diagnosis." *Id.* There is substantial evidence in the record to support the ALJ's finding.

Plaintiff received therapy at Kedren Community Mental Health Center ("Kedren") at times from March 2012 to June 2, 2014. The medical record and progress notes show that plaintiff did not complain of schizophrenia and doctors did not diagnose plaintiff with schizophrenia. *See id.* at 187-217, 435-49. Plaintiff also received treatment at St. John's Well Child and Family Center ("St. John") between July 2011 and April 7, 2014. Again, plaintiff did not complain of schizophrenia and doctors did not diagnose plaintiff with schizophrenia. *See id.* at 218-80, 301-434. During a March 23, 2012 visit, schizophrenia is listed under plaintiff's past medical history for the first time. *Id.* at 305. The illness remains under plaintiff's past medical history during future visits, but there is no evidence of plaintiff being treated for or complaining of schizophrenia. *See, e.g., id.* at 305-06, 336-39, 350-52, 356-57, 369-71, 416-19, 422-24. In fact, during two visits in 2013, plaintiff was asked about the schizophrenia listing and both times she denied having schizophrenia. *Id.* at 418, 424.

Therefore, the ALJ did not err by not including psychosis, bi-polar disorder, or schizophrenia as one of plaintiff's medically determinable impairments. But while not finding plaintiff suffered from those mental impairments, the ALJ did find plaintiff's depression to be a medically determinable impairment, specifically finding plaintiff had a severe affective disorder impairment. *Id.* at 21. And plaintiff took this impairment into account in assessing plaintiff's RFC.

The ALJ determined plaintiff was limited to jobs that would require no more than occasional contact with the general public, co-workers, or supervisors. *Id.* at 24. In reaching his RFC determination, the ALJ discussed all of the medical history, and gave significant weight to, among others, the opinions of examining psychiatrist Dr. Raymond Yee, M.D., and DDS psychological medical consultant Stephen Bailey, Ed.D. *Id.* at 27-28. Dr. Yee found plaintiff had no "impairment in functioning from any psychiatric disorder," and no limitations on what she could

8

do at work. *Id.* at 26-27, 296-97. Dr. Bailey opined based on his review of the medical records that plaintiff did have an affective disorder impairment but it was non-severe, with her depression symptoms well controlled by medication. *Id.* at 27, 76. Thus, in finding plaintiff's affective disorder was a severe impairment and in limiting plaintiff to no more than occasional contact with the public, co-workers, and supervisors, the ALJ found plaintiff more limited than Dr. Yee or Dr. Bailey found her to be.

Plaintiff argues the ALJ nonetheless erred because he failed to adequately consider the opinion of plaintiff's treating physicians at St. John and Kedren. P. Mem. at 3. Specifically, plaintiff contends "[t]here is little if any consideration of [plaintiff's] mental problems and her ability to sustain work activity." *Id.* This contention is not supported by the record.

The ALJ specifically noted he took into account the medical record when assessing plaintiff's RFC, and found that there was a "lack of findings and sporadic, conservative, routine treatment." *Id.* at 28; *see id*. at 25-26. The ALJ cited to several mental exams that yielded normal findings. *Id.* at 26 (citing to mental exams that took place in October 2011, March and May 2012, and January, April, May, July, and December of 2013). There is substantial evidence in the medical record to support the ALJ's finding. For instance, on September 1, 2011, plaintiff visited St. John where a mental status exam reflected that her judgment and insight were intact; she was oriented to time, place, and person; her memory was intact for recent and remote events; and there were no signs of depression, anxiety, or agitation." *Id*. at 331. During plaintiff's visits to St. John between 2011 and 2014, all but one psychological evaluation listed a low depression severity and found that plaintiff was alert and cooperative, and that her mood, affect, attention and concentration were normal. *Compare id.* at 305-06, 326, 339, 352, 370, 410 (mental exams yielding normal results), *with id.* at 374-75 (mental

9

exam results finding "depressed affect and agitated, teary at times" and "Depression severity: Mild").

The ALJ also noted plaintiff had only sporadic outpatient mental health therapy counseling in 2012 and 2014. *Id.* at 26. This is shown in the record reflecting her visits to Kedren three times in March of 2012 and roughly once a month between January and June 2014. *Id.* at 187-217, 435-449. Plaintiff also asserts that she visited St. John for her mental impairment; however, the treatment notes reflect that other than to obtain a prescription refill, her visits to St. John were not in connection to her mental impairments. *See id.* at 292-391.

In short, it is clear the ALJ properly considered all the medical evidence. Further, there were no limitations opined by treating or other physicians greater than those found by the ALJ. The ALJ's findings were supported by substantial evidence in the record. Accordingly, the ALJ properly determined plaintiff's mental impairments and RFC.

**B.** **The ALJ Offered Clear and Convincing Reasons Supported by Substantial Evidence for Discounting the Subjective Evidence**

Plaintiff also argues the ALJ provided no valid reason for rejecting plaintiff's subjective complaints and disregarding the nature of her mental condition. P. Mem. at 7.

When assessing a plaintiff's credibility, the ALJ must engage in a two-step analysis. *Trevizo v. Berryhill*, 862 F.3d 987, 1000 (9th Cir. 2017) (citing *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014)). First, the ALJ must determine if there is medical evidence of an impairment that could reasonably produce the symptoms alleged. *Id.* "If such evidence exists and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so," and those reasons must be supported by substantial evidence in the record. *Id.*;

*Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1161 (9th Cir. 2008).

In weighing plaintiff's credibility, the ALJ may consider many factors, including: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony . . . that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). But "subjective pain testimony cannot be rejected on the *sole* ground that it is not fully corroborated by objective medical evidence." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (emphasis added) (citation omitted). The ALJ must also "specifically identify the testimony [from the claimant that] she or he finds not to be credible and . . . explain what evidence undermines the testimony." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting *Holohan v. Massanari,* 246 F.3d 1195, 1208 (9th Cir. 2001)).

Here, plaintiff testified that her impairments prevent her from working. Specifically, with regard to her mental impairments, plaintiff stated that she is being treated for depression and she is unable to maintain any mood stability. *Id.* at 41. Plaintiff also alleges that she hears voices that follow her and she sometimes responds and yells at the voices. *Id.* at 41, 51.

At the first stage of his credibility analysis, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. AR 25. At the second stage, the ALJ found that plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms are "not entirely credible." *Id.*

The first reason the ALJ provided for finding plaintiff's subjective claims to be not entirely credible is that the "medical evidence record shows very little treatment" for plaintiff's medical condition. *Id.* at 25-26. The ALJ specifically

indicated that the records "reflect sporadic outpatient mental health therapy counseling in 2012 and 2014. *Id.* at 26. There is substantial evidence in the record to support this finding. Plaintiff testified that she receives therapy for her depression at Kedren, and plaintiff informed the treating physician at St. John that she receives therapy at Kedren. *Id.* at 45, 50, 424. As discussed above, the record reflects plaintiff visited Kedren just three times in March of 2012 and roughly once a month between January and June 2014. *Id.* at 187-217, 435-449. But a claimant's failure to seek mental health treatment is not necessarily a clear and convincing reason to find him less credible because "those afflicted [with depression] often do not recognize that their condition reflects a potentially serious mental illness." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996); *accord Allen v. Comm'r*, 498 Fed. Appx. 696, 697 (9th Cir. 2012) (the "[f]ailure to seek treatment is not a substantial basis on which to conclude that a claimant's mental impairment is not severe"). Moreover, here, plaintiff did seek some treatment. Nonetheless, while this reason is not clear and convincing by itself, it is consistent with the evidence in the record that plaintiff's need for treatment was minimal.

In particular, the second reason the ALJ gave for discounting plaintiff's credibility is that the medical evidence in the record and the medical opinion evidence undermined plaintiff's testimony about the severity of her impairments and their limiting effects. *Id.* at 25. The ALJ noted the record reflects normal findings for plaintiff's mental exams. *Id.* at 26. As discussed above, during her visits to St. John between 2011 and 2014, all but one psychological evaluation listed a low depression severity and found that plaintiff was alert and cooperative, and that her mood, affect, attention and concentration were normal. *Compare id.* at 305-06, 326, 339, 352, 370, 410 (mental exams yielding normal results), *with id.* at 374-75 (mental exam results finding "depressed affect and agitated, teary at times" and "Depression severity: Mild"). The ALJ also cited to Dr. Yee's finding of lack

12

of psychiatric impairment. *Id.* at 26; *see id.* at 296. Dr. Yee found plaintiff had "good grooming and good hygiene," she was "polite, cooperative and friendly," her speech was "productive and coherent," her mood and affect were appropriate, and she did not have mood swings. *Id.* at 294-95. Moreover, Dr. Yee observed that her intellectual functioning, fund of knowledge, concentration, insight and judgment were all normal. *Id.* at 295. Dr. Yee concluded plaintiff's cognition is intact and she could perform detailed and complex tasks, maintain regular attendance and perform work consistently, complete a normal workday and workweek, accept instruction from supervisors, interact with coworkers and the public, and that she could deal with the usual stressors of competitive employment. *Id.* at 296. Additionally, the ALJ relied on the opinion of Dr. Bailey, who opined that plaintiff's mental impairment was non-severe because she was not hospitalized, she reported she was doing well on her medication, and she had no problems with activities of daily living and daily functioning. *Id.* at 26; *see id.* at 76. Therefore, there is substantial evidence to support the ALJ's finding that medical and opinion evidence undermines plaintiff's credibility, and this was a clear and convincing reason.

Finally, the ALJ found plaintiff's "demeanor and testimony at the hearing" undermined the credibility of her allegations regarding her symptoms. *Id.* at 28; *see Matney*, 981 F.2d at 1020 (holding the ALJ did not err in relying on claimant's "demeanor and appearance at the hearing" when evaluating subjective complaints of pain). The ALJ explained:

> at the hearing, [plaintiff] was lucid and responsive to questioning. Her answers demonstrated good memory recall and logical thinking, as her answers were relevant and responsive. Her demeanor and testimony also reflected good social interaction and concentration, persistence and pace. She was cooperative, voluntarily offered information, and

1  seemed at ease with the hearing process.
2  *Id.* at 28. This too was a clear and convincing reason to discount plaintiff's
3  credibility.
4  Accordingly, the ALJ properly found plaintiff's testimony to be not entirely
5  credible in that he provided two clear and convincing reasons supported by
6  substantial evidence for doing so.

## C. The ALJ Did Not Err at Step Five

Plaintiff argues the ALJ erred at step five. Specifically, plaintiff argues that as a result of inadequate evaluation of the mental impairment, the ALJ failed to properly question the vocational expert with respect to plaintiff's mental limitations, and so erred in relying on that testimony to find plaintiff could perform a significant number of jobs. P. Mem. at 8.

At step five, the burden shifts to the Commissioner to show that the claimant retains the ability to perform other gainful activity. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). To support a finding that a claimant is not disabled at step five, the Commissioner must provide evidence demonstrating other work exists in significant numbers in the national economy that the claimant can perform, given his or her age, education, work experience, and RFC. 20 C.F.R. § 416.912(f). The Commissioner may satisfy this burden through the testimony of a vocational expert. *Lounsburry*, 468 F.3d at 1114. In response to a hypothetical that includes the limitations the ALJ found credible, a VE may testify as to "(1) what jobs the claimant, given his or her [RFC], would be able to do; and (2) the availability of such jobs in the national economy." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999).

Here, the ALJ posed a hypothetical person to the VE with the same limitations as in the RFC the ALJ determined for plaintiff, and the VE testified such person could perform the jobs of housekeeping cleaner, assembler of small

products, and office helper. AR at 59. Plaintiff's argument of error in the step five determination depends on her argument that the ALJ erred in determining plaintiff's RFC. As discussed above, the court finds the ALJ properly evaluated plaintiff's mental impairment and properly determined plaintiff's RFC. Accordingly, the hypothetical question the ALJ presented to the VE and the ALJ's questioning of the VE was proper, and there was no error at step five.

## V.
## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing the complaint with prejudice.

DATED: May 31, 2018

SHERI PYM
United States Magistrate Judge